# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5255-17T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

J.A.W.,[1]

     Defendant-Appellant.

_____

Submitted October 19, 2020 – Decided November 12, 2020

Before Judges Mayer and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 16-11-3281.

Joseph E. Krakora, Public Defender, attorney for appellant (Michael A. Priarone, Designated Counsel, on the brief).

Jill S. Mayer, Acting Camden County Prosecutor, attorney for respondent (Maura Murphy Sullivan, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

---

[1] To protect the privacy of the victim and other individuals who testified at trial, we use initials instead of proper names. See R. 1:38-3(c)(9).

PER CURIAM

Defendant J.A.W. appeals from an April 19, 2018 judgment of conviction on nine counts involving sexual offenses committed against a minor. Defendant challenges various evidentiary rulings before and during the trial. He also challenges denial of several motions. Among his contentions related to the sentence imposed, defendant contends the judge denied him the opportunity to speak at sentencing in accordance with Rule 3:21-4(b). We affirm as to defendant's challenges on appeal except to remand for resentencing, allowing defendant the opportunity to allocute prior to imposing the sentence.

The following facts are derived from the trial testimony. In 2008, defendant lived with his wife, T.W.[2] At that time, T.W.'s then thirteen-year old brother, T.S., lived with his mother near the home of defendant and T.W. Because the victim's biological father was absent from his life, T.S. regarded defendant as a father figure.

From September 2008 through June 2009, T.S. often visited his sister's home and to "hang out" with defendant and play video games. It was during

_____

[2] Throughout this opinion, we use "T.S." to refer to the victim; "T.W." to refer to the victim's sister and defendant's wife; "M.B." to refer to the "fresh complaint" witness and the victim's friend; and "M.L." to refer to defendant's former employer.

this time period that defendant showed pornography to T.S. and discussed sex with him. Defendant asked the victim if he "liked what [he] saw," and if T.S. would engage in any of the depicted sexual acts with defendant.

During those ten months, T.S. performed fellatio on defendant approximately twenty times. Defendant also attempted to penetrate the victim's anus with his penis twice but T.S. "stopped it." At some point, T.S. stated he no longer wanted to engage in sexual activities with defendant. T.S. "felt . . . [he] wasn't able to live the life that [he] should have lived at that age. And [he] wanted to hang out with [his] friends more, and [he] wanted to just be a kid."

Subsequent to defendant's sexual assaults of the victim, T.S. moved from South Jersey to Philadelphia. T.S. never disclosed defendant's sexual assaults until he was twenty-years old. In the spring of 2015, T.S. told his close friend, M.B., about defendant's sexual assaults when T.S. was thirteen years old. M.B. was "shocked" to learn of defendant sexually assaulting T.S. and expressed support for his long-time friend. According to T.S., he did not intend to disclose defendant's sexual assaults, but it "just . . . came out" while T.S. was talking to M.B.

After he told M.B. about defendant's sexual assaults, T.S. also disclosed the information to his mother and sisters, including defendant's wife. When

3

defendant learned T.S. intended to report the sexual assaults to the police, defendant text messaged T.S. and asked if T.S. would speak to him. T.S. agreed to speak with defendant the next day. Defendant then texted the following to T.S.:

> I'm very sorry, [T.S.]. I was very wrong. I will seek help . . . . I just want everyone to suffer [sic] because I made bad decisions. Again, I'm sorry. I wish I could change it. I wasn't thinking of how that would have affected you. [T.S.], I'm begging for your forgiveness. What I did was wrong. I never meant to hurt you. I need to take care of [T.W. and children], and I can't do that behind bars.
>
> I have no excuse for what I've done to you, and if I could rewind I would. I understand why you came forward with all this[.] Trying to protect people you love from me is very courageous. I promise you I will seek help and never do anything like that again. I didn't think I was harming you when it was happening. I was wrong. I'm very sorry.

On the morning of April 3, 2015, T.S. gave a statement to the police, and the police took defendant into custody that afternoon.

Prior to being arrested, defendant contacted his then-employer, M.L. In a text message, defendant told M.L. he would likely be arrested, and asked if M.L. would provide bail money. M.L. asked defendant to telephone him. When the two spoke on the telephone, defendant explained "he was abused as a child and

[did] the same" to a family member. M.L. declined to assist defendant and immediately terminated defendant's employment.

According to T.W., defendant had a close relationship with T.S. and served as a father figure to him. T.S. was frequently at their house, and defendant would take care of T.S. when T.W. or her mother were not home. T.W. learned about defendant sexually assaulting T.S. from her mother. When T.W. confronted defendant, he admitted the allegations were true. Defendant told T.W. "he had [T.S.] give him a blow job . . . a few times" and tried anal sex. T.W. said defendant left his cell phone at the house on the day of his arrest. Initially, T.W. testified she did not use defendant's cell phone that day. However, when the State recalled T.W. to the stand during the trial, she testified she may have used defendant's phone while he was in custody. T.W. explained she was uncertain whether she used defendant's cell phone that day because she was in a state of panic and seeking legal counsel for defendant.

Detective Christopher Robinson of the Camden County Prosecutor's Office, an investigator with the High-Tech Crimes Unit, specialized in forensically extracting data from cell phones. Detective Robinson reviewed the web browsing history and text messages on defendant's cell phone. A search of defendant's cell phone revealed text messages between defendant and T.S. and

5

between defendant and M.L. In addition, the detective found hundreds of visits to pornographic websites between January and April 2015. Defendant's cell phone also revealed searches for "New Jersey state prison," "[c]hild molester jail time," "[n]on-aggravated child molester jail time," and "New Jersey child molester plea deal." These searches were conducted on the day of defendant's arrest. Many of the searches were during the evening hours when defendant was without his phone and in police custody. Detective Robinson explained he used an older version of the data extraction software, which ran on universal coordinated time. Thus, when he examined defendant's cell phone, to reflect the real time of the searches and text messages, the detective had to subtract four hours.

A Camden County grand jury indicted defendant on charges of first-degree aggravated sexual assault, N.J.S.A. 2C:14-(2)(a)(2)(a) (count one); second-degree sexual assault, N.J.S.A. 2C:14-2(c)(4) (count two); four counts of second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(1) (counts three, six, eight, and ten); second-degree attempted aggravated sexual assault, N.J.S.A. 2C:5-1(a)(1) and 2C:14-2(a)(2)(a) (count four); third-degree attempted sexual assault, N.J.S.A. 2C:5-1(a)(1) and 2C:14-2(c)(4) (count five); third-degree aggravated criminal sexual contact, N.J.S.A. 2C:14-3(a) (count

seven); and third-degree obscenity for persons under age eighteen, N.J.S.A. 2C:34-(b)(2) (count nine).

Prior to trial, the State announced its intent to present "fresh complaint" testimony from M.B., the victim's friend. Defendant moved to exclude such testimony, which the pretrial judge denied in an April 13, 2017 order.

Before jury selection, on November 15, 2017, the trial judge granted the State's motion to dismiss count nine, the third-degree obscenity charge, as barred by the statute of limitations. In addition, the judge denied defendant's motion to dismiss count four, second-degree attempted aggravated assault, and count five, third-degree attempted sexual assault, deeming those charges were not time-barred.

During the trial, the jury heard testimony from the victim; as well as M.B., in whom T.S. confided; M.L., defendant's former employer; T.W., defendant's wife and T.S.'s sister; and Detective Robinson.

The State rested on November 16, 2017. However, the next day, the trial judge allowed the State to reopen the matter to elicit further testimony from defendant's wife and the detective who extracted data from defendant's cell phone.

A-5255-17T4

After the State again rested on November 17, 2017, defendant moved for a judgment of acquittal on all counts, which the judge denied. After denial of that motion, the defense rested without calling any witnesses. The trial then recessed for the Thanksgiving holiday. When trial resumed on November 28, 2017, the parties gave closing arguments and the judge instructed the jury. On November 29, 2017, the jury returned a unanimous guilty verdict on all remaining count.

The trial judge read his sentencing decision into the record on March 16, 2018. The judge sentenced defendant as follows: sixteen years subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, on count one for aggravated sexual assault, consecutive to counts three and four; eight years on count three for endangering the welfare of a child, consecutive to counts one and four; eight years subject to NERA, on count four for attempted aggravated sexual assault, consecutive to counts one and three; eight years on count six for endangering the welfare of a child, concurrent to the other counts; eight years on count eight for endangering the welfare of a child, concurrent to the other counts; and eight years on count nine for endangering the welfare of a child, concurrent to the other counts. Defendant's aggregate sentence was thirty-two years in prison with a parole ineligibility period of twenty years, four months, and one day.

On appeal, defendant raises the following arguments:

POINT I

THE TRIAL COURT ERRED IN ADMITTING THE "FRESH COMPLAINT" TESTIMONY OF [M.B.] AND IN FAILING TO GIVE A CURATIVE INSTRUCTION AFTER [M.B.] TESTIFIED AS TO GRAPHIC AND INCORRECT DETAILS OF [T.S.]'S COMPLAINT.

POINT II

THE TRIAL COURT ERRED IN PERMITTING THE STATE TO REOPEN THEIR CASE FOR THE PURPOSE OF RECALLING [T.W.] TO CHANGE HER EARLIER TESTIMONY THAT SHE HAD NOT USED DEFENDANT'S PHONE ON THE DAY OF HIS ARREST AND IN REFUSING [DEFENDANT'S] REQUEST TO INCLUDE IN ITS INSTRUCTIONS TO THE JURY THE "FALSE IN ONE, FALSE IN ALL" CHARGE.

POINT III

DEFENDANT'S MOTION TO DISMISS COUNTS [FOUR] AND [FIVE], CHARGING ATTEMPTED AGGRAVATED SEXUAL ASSAULT AND ATTEMPTED SEXUAL ASSAULT, AS BARRED BY THE STATUTE OF LIMITATIONS WAS ERRONEOUSLY DENIED BY THE TRIAL COURT.

POINT IV

THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR A JUDGMENT OF ACQUITTAL ON THE SECOND[-]DEGREE

9

ENDANGERING CHARGES IN COUNTS THREE, SIX, EIGHT AND TEN BECAUSE THERE WAS INSUFFICIENT EVIDENCE ADDUCED BY THE STATE THAT THE DEFENDANT HAD A "LEGAL DUTY" TO CARE FOR [T.S.] OR HAD "ASSUMED RESPONSIBILITY FOR THE CARE OF A CHILD" AS REQUIRED BY N.J.S.A. 2C:24-4A(1).

POINT V

THE CONVICTIONS ON THE ENDANGERING COUNTS MUST BE VACATED AS THERE IS NO SPECIFIC CONDUCT ALLEGED AS CONSTITUTING THE PREDICATE CONDUCT OF THE OFFENSE IN ALL OF THOSE COUNTS WHICH ARE IDENTICAL IN THEIR WORDING AND IN THE INTERROGATORY SUBMITTED TO THE JURY.

POINT VI

CUMULATIVE ERROR DEPRIVED DEFENDANT OF A FAIR TRIAL AND REQUIRES THAT DEFENDANT'S CONVICTION AND SENTENCE BE REVERSED.

POINT VII

DEFENDANT'S SENTENCE IS EXCESSIVE AND ILLEGAL BECAUSE THE TRIAL COURT WAS MISTAKEN REGARDING THE PAROLE CONSEQUENCES OF THE SENTENCE IMPOSED, IGNORED EVIDENCE OF MITIGATING FACTOR [ELEVEN], MISAPPLIED THE CRITERIA OF STATE V. [YARBOUGH][3] IN IMPOSING

---

[3] 100 N.J. 627, 643-44 (1985).

CONSECUTIVE SENTENCES AND FAILED TO ACCORD DEFENDANT THE OPPORTUNITY TO ALLOCUTE.

We first consider defendant's argument that trial judge erred by admitting the "fresh complaint" testimony of M.B. "[A] trial court's evidentiary rulings are entitled to deference absent a showing of an abuse of discretion . . . ." State v. Nantambu, 221 N.J. 390, 402 (2015) (quoting State v. Harris, 209 N.J.431, 439 (2012)). A trial court's evidentiary rulings should only be reversed if the rulings were "so wide of the mark that a manifest denial of justice resulted." State v. Kuropchak, 221 N.J. 368, 385-86 (2015) (quoting State v.Marrera, 148 N.J. 469, 484 (1997)). Where there was no objection to the claimed error at trial, we review the matter for plain error. R. 2:10-2. The possibility of injustice must be "sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." State v. Macon, 57 N.J. 325, 336 (1971).

Evidence of a hearsay statement regarding a victim's complaint of sexual abuse may be admissible for the limited purpose of negating an implied inference that the alleged victim's "initial silence or delay indicates that the charge is fabricated." State v. R.K., 220 N.J. 444, 455 (2015) (citing State v. Hill, 121 N.J. 150, 163 (1990)). Such testimony is not admissible to prove any

substantive element of the offense or to bolster the victim's credibility. State v. Bethune, 121 N.J. 137, 148 (1990). The victim must make the statement "spontaneously and voluntarily, within a reasonable time after the alleged assault, to a person the victim would ordinarily turn to for support." R.K., 220 N.J. at 455 (citing State v. W.B., 205 N.J. 588, 616 (2011)). When the declarant is a child at the time of the alleged abuse, the requirements are relaxed "because silence is one of the many ways a child may respond to sexual abuse." Bethune, 121 N.J. at 148. However, the testimony must not recount unnecessary details of the complaint. Id. at 146-47. Only details "minimally necessary to identify the subject matter of the complaint should be admitted . . . ." R.K., 220 N.J. at 456.

M.B. testified that T.S., approximately six years after the sexual abuse, told him defendant "would make him suck his dick." Defendant argues admitting M.B.'s testimony was erroneous because the complaint was not "fresh," and the testimony improperly and graphically embellished the complaint.

Having reviewed the record, the pre-trial judge properly denied defendant's motion to exclude M.B.'s fresh complaint testimony. Although the time period between the alleged abuse and T.S.'s disclosure of the abuse was

lengthy, when weighed against the spontaneity by which the disclosure was made to M.B., a trusted childhood friend, the judge concluded the fresh complaint testimony was "admissible to prove only that the victim complained" and negate an inference that the allegations were fabricated.

Similarly, the judge rejected defendant's contention that M.B.'s testimony constituted a "lurid embellishment" of the complaint. The prosecutor asked M.B. to be more specific regarding the acts of molestation as conveyed to him by T.S. Defense counsel did not object to the prosecutor's questioning. Thus, we review defendant's assertion that the judge, sua sponte, should have issued a curative instruction or strike the testimony for plain error. The failure to give a curative instruction or strike the testimony is reversible only if it raises a reasonable doubt that the jury was led to a result it otherwise would not have reached. R. 2:10-2; Macon, 57 N.J. at 335-36. Having reviewed the record, we are satisfied the trial judge's issuance of proper limiting instructions, immediately following M.B.'s testimony and again at the conclusion of trial, nullified any potential prejudice to defendant. See State v. Scherzer, 301 N.J. Super. 363, 421 (App. Div. 1997) ("Although the prosecutor acted improperly in compelling . . . overly detailed testimony, the judge immediately instructed

13

the jury following the testimony and thereby minimized the risk of prejudice to defendants.").

Moreover, the trial judge did not need to strike M.B.'s testimony or provide a curative instruction because M.B. recounted only such details as were minimally necessary to identify the subject matter of the complaint. The substance of M.B.'s testimony relayed the basic allegations of the complaint without delving into graphic details. See State v. Balles, 47 N.J. 331, 339 (1966) ("She did not elaborate and could hardly have said less and still identified the nature of [the] complaint."); cf. R.K., 220 N.J. at 459-60 (finding fresh complaint testimony was improper where it included graphic description of ejaculation, demonstration of masturbatory motion, and threats by the defendant that were not elicited from the victim at trial).

We next consider defendant's claim that the trial judge erred in allowing the State to reopen its case to recall T.W. to the stand and refusing to include a "false in one, false in all" jury charge. Defendant contends that T.W., on recall, changed her earlier testimony regarding her use of defendant's cell phone after his arrest and that change in testimony warranted inclusion of the "false in one, false in all" charge.

The judge limited T.W.'s testimony on recall to whether or not she used defendant's cell phone following his arrest. During her recall testimony, T.W. explained she did not recollect using defendant's cell phone on the day of his arrest because she was in a state of panic. She further told the jury that no one else had access to defendant's cell phone after his arrest, and she could have used his device to search for lawyers.

A trial court's decision to reopen a case for additional evidence is reviewed for abuse of discretion. State v. Wolf, 44 N.J. 176, 191 (1965). Trial courts have "broad discretion in evidentiary matters as well as matters affecting the conduct and proceedings in a trial." Barber v. Shop-Rite of Englewood & Assocs., Inc., 393 N.J. Super. 292, 298 (App. Div. 2007) (citing State v. E.B., 348 N.J. Super. 336, 344 (App. Div. 2002)). A trial court should reopen a case for introduction of additional evidence when "the ends of justice will be served by a reopening . . . ." Wolf, 44 N.J. at 191 (citing Braden v. Lewis, 259 P.2d 16, 19 (Cal. Ct. App. 1953)).

Here, the trial judge properly exercised his discretion in reopening the State's case and allowing additional testimony based on an apparent discrepancy regarding when, and by whom, defendant's cell phone was used on the day of his arrest. The judge allowed the State to clarify whether defendant or T.W.

15

could have used the cell phone for the purpose of conducting various legal searches on the date of defendant's arrest. We are satisfied the judge's reopening of the State's case to clarify a discrepancy in the evidence served the ends of justice and therefore was not an abuse of discretion.

After reopening the State's case to allow T.W.'s additional testimony, defense counsel asked the judge to provide the "false in one, false in all" instruction to the jury. The "false in one, false in all" instruction states:

> If you believe that any witness or party willfully or knowingly testified falsely to any material facts in the case, with intent to deceive you, you may give such weight to his or her testimony as you may deem it is entitled. You may believe some of it, or you may, in your discretion, disregard all of it.
>
> [Model Jury Charge (Criminal), "False in One – False in All" (rev. Jan 14, 2013).]

A trial judge has discretion to give a specific instruction to the jury where the judge "reasonably believes a jury may find a basis for its application." State v. Ernst, 32 N.J. 567, 583-84 (1960) (citing Hargrave v. Stockloss, 127 N.J.L. 262, 266 (1941)). The "false in one, false in all" charge should be given only where the witness testifies with "conscious falsity as to a material fact." Id. at 583. "[I]nadvertent misstatements or immaterial falsehoods" do not suffice to

issue the instruction.  State v. Young, 448 N.J. Super. 206, 228 (App. Div. 2017) (quoting State v. D'Ippolito, 22 N.J. 318, 324 (1956)).

Here, the trial judge denied defendant's request to include the "false in one, false in all" instruction because it was an "ancient charge."  The judge reasoned defense counsel would have the opportunity during closing argument to "exploit inconsistencies" in the State's evidence.  In addition, the judge noted the jury would be instructed as to the credibility of the witnesses through his issuance of the model jury instruction on credibility, which subsumes the "false in one, false in all" charge.  It is presumed the jury followed the judge's instructions.  State v. Martini, 187 N.J. 469, 477 (2006).

Further, the judge did not find that T.W. consciously falsified her testimony as to a material fact regarding her possible use of defendant's cell phone.  T.W. testified on recall that she could have used defendant's cell phone; not that she actually did so.  Finding T.W.'s original testimony to the jury may have contained an inadvertent misstatement related to the use of defendant's cell phone, the trial judge did not abuse his discretion in allowing the State to reopen its case and denying defendant's request to charge the jury with the "false in one, false in all" instruction.

We turn to defendant's argument that the trial judge erred in denying his motion to dismiss counts four and five of the indictment, charging attempted aggravated sexual assault, N.J.S.A. 2C:5-1(a)(1) and 2C:14-2(a)(2)(a), and attempted sexual assault, N.J.S.A. 2C:5-1(a)(1) and 2C:14-2(c)(4). Defendant claims charges related to "attempts" to commit sexual assault are not governed by the extended time limitations for sexual assault and therefore are time-barred.

N.J.S.A. 2C:1-6 establishes the time limitations for prosecuting various offenses. A prosecution for sexual assault may be commenced at any time. N.J.S.A. 2C:1-6(a)(1). However, for crimes not specifically enumerated under the statute, those prosecutions must be commenced within five years. N.J.S.A. 2C:1-6(b)(1). Defendant argues the offenses related to attempted sexual assault were filed beyond the five-year time limit.

The trial judge denied defendant's motion to dismiss counts four and five based on the Legislature's intent to expand the time limitations for prosecutions on behalf of victims of childhood sexual abuse. We review the judge's legal ruling de novo, and the decision is not entitled to any special deference. Manalapan Realty v. Manalapan Twp. Comm., 140 N.J. 366, 378 (1995).

We reject defendant's argument because neither the plain language of the statute nor the legislative history evincing the Legislature's intent in enacting

the statute suggests an attempted sexual assault should be treated differently than a completed sexual assault for calculating the period of limitations. The Legislature expressed its intent to give victims of sexual assault, particularly minors, additional time to purse their allegations. Prosecutions on behalf of minor victims of sexual assault may be commenced within five years of the minor turning eighteen or within two years of the victim's discovery of the offense, whichever is later. N.J.S.A. 2C:1-6(b)(4). The statute reflects the Legislature's clear intent to allow minors extra time to report sex crimes whether those crimes were attempted or completed.

Defendant cites no case in which a criminal charge for an attempted act was dismissed on time limitation grounds where prosecution for a completed criminal act was not time barred. Based on the plain language of the statute, we are satisfied the attempted sexual assault charges are not detached from the completed sexual assault charges for calculating the period of limitations.

We next address defendant's claim the trial judge erred in denying his motion for a judgment of acquittal on counts three, six, eight, and ten, charging second-degree endangering the welfare of a child. Endangering the welfare of a child by engaging in sexual conduct may constitute a second-degree offense where a defendant has a "legal duty for the care of a child or . . . has assumed

responsibility for the care of a child . . . ." N.J.S.A. 2C:24-4(a)(1).  Defendant

contends there was insufficient evidence adduced at trial to prove he had a duty

to care for, or assumed responsibility for the care of, T.S.

On a motion for a judgment of acquittal, the judge must determine:

> [w]hether, viewing the State's evidence in its entirety, be that evidence direct or circumstantial, and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, a reasonable jury could find guilt of the charge beyond a reasonable doubt.
>
> [State v. Reyes, 50 N.J. 454, 458-59 (1967) (citing State v. Fiorello, 36 N.J. 80, 90-91 (1961)).]

We review a trial court's decision on a motion for judgment of acquittal,

applying the same standard as the trial court.  State v. Moffa, 42 N.J. 258, 263

(1964).  We consider only the evidence presented by the State and reasonable

inferences from that evidence.  State v. Samuels, 189 N.J. 236, 245 (2007).  An

inference is reasonable when "it is more probable than not that the inference is

true; the veracity of each inference need not be established beyond a reasonable

doubt in order for the jury to draw the inference."  Brown, 80 N.J. at 592 (citing

State v. DiRienzo, 53 N.J. 360, 376 (1969)).  Although the State is entitled to

all reasonable inferences that can be drawn from its evidence, it still must prove

all elements of the charge beyond a reasonable doubt. State v. Martinez, 97 N.J. 567, 572 (1984).

N.J.S.A. 2C:24-4(a)(1) elevates the third-degree crime of endangering the welfare of a child to a second-degree crime where the actor engages in sexual conduct with the child in situations where the defendant has "a legal duty for the care of a child" or has "assumed responsibility for the care of a child." The statute includes not only formal, legal relationships between the defendant and the victim, but also defendants who undertake a "continuing or regular supervisory caretaker relationship with the child . . . ." State v. Galloway, 133 N.J. 631, 661 (1993). "[A] person assuming only temporary, brief, or occasional caretaking functions, such as irregular or infrequent babysitting," would not be subject to the enhancement. Id. at 661-62; see also New Jersey Div. of Child Prot. & Permanency v. B.H., 460 N.J. Super. 212, 221 (App. Div. 2019) (holding a boyfriend who did not "assume a general and ongoing responsibility for regular supervision or care" of a child could not be a guardian for purposes of an abuse or neglect finding under Title Nine).

Here, the State presented evidence that defendant regularly assumed responsibility for the care of T.S. Defendant's wife confirmed defendant cared for T.S. in their home when she was not home. T.S. considered defendant to be

his closest male family member, whom he trusted and loved, and considered him a father figure. T.S. spent time with defendant "[a]lmost every day," "hang[ing] out," playing video games, and "wheeling in the woods in [defendant's J]eep." Based on this evidence, a reasonable jury concluded defendant was more than a babysitter and assumed responsibility for the care of T.S. on a regular basis, thus substantiating the enhanced charge.

Defendant next contends his convictions on counts three, six, eight, and nine, charging endangering the welfare of a child, N.J.S.A. 2C:24-4, must be vacated because the indictment and verdict sheet did not "contain any allusion to specific conduct by the defendant other than a general allusion to 'sexual conduct.'" Defendant raised this argument for the first time on appeal, and therefore, we review the matter for plain error. R. 2:10-2. An indictment should only be disturbed if it is clear that the indictment was palpably defective. State v. New Jersey Trade Waste Ass'n, 96 N.J. 8, 18-19 (1984). A charge is sufficiently stated when it alleges the "essential facts of the crime." Id. at 19 (citing State v. LaFera, 35 N.J. 75, 81 (1961)).

N.J.S.A. 2C:24-4(a)(1) prohibits "sexual conduct which would impair or debauch the morals of [a] child." Although "sexual conduct" is not defined by the statute, "clearly included are sexual assault[] and sexual contact." State ex

rel. D.M., 238 N.J. 2, 19 (2019) (quoting State v. Perez, 177 N.J. 540, 553 (2003)).  The showing of pornographic images to a child may be considered "sexual conduct" for the purposes of an endangering charge.  State v. Hackett, 323 N.J. Super. 460, 471-72 (App. Div.), aff'd as modified, 166 N.J. 66 (2001).

Here, while the endangering the welfare of a child charges did not refer to specific acts of sexual conduct by defendant, each count was preceded by a charge that specified the conduct.  Count three was preceded by the sexual assault charge in count two, specifying the act of fellatio.  Count six was preceded by the sexual assault charge in count five, alleging defendant attempted to anally penetrate the victim.  Count eight was preceded by the aggravated criminal sexual contact charge in count seven, delineating defendant's touching of the victim's buttocks.  Count ten of the indictment was preceded by the lewdness charge in count nine, alleging defendant showed the victim obscene material in violation of N.J.S.A. 2C:34-3(b).[4]  The indictment was therefore factually sufficient to put defendant on notice of the charges and the misstatement as to count ten in the verdict sheet was not "clearly capable of producing an unjust result."  R. 2:10-2.

---

[4] Count nine of the indictment was dismissed by the trial court with the State's consent.  Thus, the charge stated as count ten of the indictment appeared as count nine on the jury verdict sheet.

A-5255-17T4

We turn to defendant's argument that cumulative trial errors deprived him of a fair trial. It is well-established that "[a] defendant is entitled to a fair trial but not a perfect one." State v. Marshall, 123 N.J. 1, 170 (1991) (quoting Lutwak v. United States, 344 U.S. 604, 619 (1953)).

Because we found no individual errors before or during the trial, we need not analyze defendant's cumulative error argument. Moreover, defendant failed to brief this argument on appeal, and we deem the argument waived. See Weiss v. Cedar Park Cemetery, 240 N.J. Super. 86, 102-03 (App. Div. 1990) (citing In v. Bloomingdale Convalescent Ctr., 233 N.J. Super. 46, 48 n. l (App. Div. 1989)) ("The failure to adequately brief the issues requires it to be dismissed as waived.").

Lastly, defendant argues the judge imposed an excessive sentence, ignored evidence of hardship to his dependents, misapplied the law of consecutive sentencing, and failed to accord him an opportunity for allocution. We review sentencing decisions for abuse of discretion, subject to the case law and the court rules. State v. Jones, 232 N.J. 308, 318 (2018). We may not substitute our evaluation of the aggravating and mitigating factors for that of the sentencing court. State v. O'Donnell, 117 N.J. 210, 215 (1989). We will affirm a sentence if the trial court's evaluation of the aggravating and mitigating factors

24

was based on competent credible evidence in the record. <u>State v. Roth</u>, 95 N.J. 334, 364-65 (1984). In addition, we are "mindful of the real-time consequences of NERA and the role that it customarily plays in the fashioning of an appropriate sentence." <u>State v. Marinez</u>, 370 N.J. Super. 49, 58 (App. Div. 2004).

Here, defendant's sentence of thirty-two years in prison with a parole ineligibility period of twenty years, four months, and one day was not an abuse of discretion. The jury found defendant guilty on all of the remaining counts of the indictment. The judge merged certain counts of the indictment, which were based on the same or similar conduct by defendant. The distinct convictions for endangering the welfare of a child under counts three, six, eight, and nine did not merge because defendant's conduct was distinct regarding those counts.

Defendant also contends the sentencing judge erred by failing to reconsider the sentence based on a miscalculation of parole ineligibility, which was identified and corrected on the record. The judge initially pronounced defendant's aggregate sentence as thirty-two years, with a parole ineligibility period of seventeen years, five months, and one day. However, the prosecutor immediately noted that the State's parole ineligibility calculation under NERA was twenty years and four months. The judge acknowledged on the record that

the State's calculation was correct and so modified his calculation of parole ineligibility period.

Regarding his challenge to the sentence imposed, defendant argues the judge failed to consider mitigating factor eleven, N.J.S.A. 2C:44-1(b)(11), concerning excessive hardship on dependents. In reviewing mitigating factor eleven, a defendant must present evidence that the sentence would impose excessive hardship on his or her dependents, beyond the general hardship associated with a period of incarceration. See State v. Locane, 454 N.J. Super. 98, 129-30 (App. Div. 2018) (indicating defendant's children would not suffer more than other children whose parents are incarcerated). Defendant failed to present sufficient evidence in support of mitigating factor eleven beyond the general hardship facing incarcerated individuals.

Defendant also argues the sentencing judge erred by misapplying the Yarbough factors for consecutive sentencing. When a defendant receives more than one sentence, the "sentences shall run concurrently or consecutively as the court determines at the time of sentence . . . ." N.J.S.A. 2C:44-5(a). In Yarbough, our Supreme Court articulated specific factors to be applied by a sentencing court in determining consecutive or concurrent sentences. Yarbough, 100 N.J. at 643-44.

Having reviewed the record, the sentencing judge properly considered the Yarbough factors in sentencing defendant consecutively on counts one, three, and four, and set forth his reasons in support of consecutive sentences based on the facts of the case. The imposition of consecutive sentences for distinct and independent crimes was not an abuse of discretion. See State v. Carey, 168 N.J. 413, 430 (2001) (discussing the imposition of consecutive sentences).

Defendant further argues the sentencing judge's failure to offer him a chance to allocute at the sentencing hearing requires reversal. Rule 3:21-4(b) requires the sentencing judge to "address the defendant personally and ask the defendant if he or she wishes to make a statement in his or her own behalf and to present any information in mitigation of punishment." The right of allocution arises out of the common law, and "reflects our commonly-held belief that our civilization should afford every defendant an opportunity to ask for mercy." State v. DiFrisco, 137 N.J. 434, 478 (1994). Our jurisprudence recognizes that even "[t]he most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself." State v. Zola, 112 N.J. 384, 428 (1988) (quoting Green v. United States, 365 U.S. 301, 304 (1961) (plurality opinion)). Therefore, when a sentencing court fails to offer the defendant the opportunity to allocute, "the error is structural and the matter must

be remanded for resentencing without regard to whether there has been a showing of prejudice." Jones, 232 N.J. at 319 (citing State v. Cerce, 46 N.J. 387, 396-97 (1966)).

Here, while the sentence imposed was supported by a detailed statement of reasons, the judge omitted addressing defendant personally and inquiring if defendant wished to speak before being sentenced. The State concedes defendant was not afforded the opportunity to allocute at sentencing. Thus, we remand for resentencing to allow defendant to exercise his right of allocution. We take no position on the sentence to be imposed at resentencing.

Affirmed as to defendant's conviction. Remanded as to sentencing to allow defendant to exercise his right to allocute. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION