[Civ. No. 8164. Third Dist. July 7, 1953.]

WINFRED C. BRADEN et al., Plaintiffs and Appellants, v. GEORGE W. LEWIS, Defendant and Appellant.

Brandenburger & White for Plaintiffs and Appellants.

Wallace S. Myers for Defendant and Appellant.

JONES, J. pro tem.—The plaintiffs in this action appealed in the first instance from the whole of the judgment but abandoned this appeal by an amended notice limiting the appeal to that portion of the judgment awarding them $4,353.51. against the defendant and cross-complainant, Lewis. Defendant Lewis appeals from the same portion of the judgment.

In the complaint it is charged that plaintiffs owned 216 shares of the capital stock of the Laird Medical Building, Inc., and that the defendants, Lewis, Anater, and the corporation converted this stock to their own use to the damage

of plaintiffs in the sum of $36,000. The defendants have denied this charge, and Lewis individually filed a cross-action to quiet title to the stock. Judgment went for him on his cross-complaint, but on their action against him plaintiffs were given a monetary judgment in the amount of $4,353,51. No appeal has been taken from the portion of the judgment quieting Lewis' title to the stock, and that portion of the judgment has now become final.

The Laird Medical Building, Inc., was organized in March, 1946, with an authorized capital of 900 shares of common stock with a par value of $100 per share. This stock was issued, 216 shares to John T. Laird; 216 shares to Frank A. Girard; 216 shares to Winfred C. Braden; 216 shares to George W. Lewis; and 36 shares to William B. Anater. All of the stock was delivered to Lewis, who paid over $90,000 to the corporation. Concurrently, and as part of the transaction, Braden executed and delivered to Lewis his promissory note in the amount of $21,600, this being at the rate of $100 per share for his 216 shares of stock. The note thus given provided that it was not to bear interest and was to be paid out of such sums as Braden would receive from the corporation, other than payments to him for services. It is not questioned that the stock given to Lewis by Braden was to secure the payment of Braden's note.

The $90,000 paid over to the corporation by Lewis was applied on payment for the construction of the Laird Medical Building, and for the purchase of the lot on which it was built. The purchase price of the lot was $12,181.13 and the cost of the building, $104,857.33, making a total expenditure for land and building of $117,038.46. The excess of the total cost over the $90,000 advanced by Lewis was obtained by the corporation by borrowing.

The building consisted of units for doctors and a space for a drugstore. Braden, a pharmacist by profession, was employed by the corporation to operate the drugstore for a period of five years. The drugstore failed to make a profit and in July, 1947, his contract of employment was terminated by mutual consent and he and his brother, one C. C. Braden, were given a lease of the drugstore premises for a term of five years, with an option for renewal for a like term. Upon the execution of the lease Braden endorsed and delivered to the defendant Anater, who was acting for Lewis, the 216 shares of stock and was given in exchange his promissory note for $21,600. In addition, and as a part of the trans-

action, Anater executed and delivered to Braden an instrument in writing, reading as follows:

"Dated: July 10, 1947

"Receipt is hereby acknowledged of Stock Certificate No. 2—Laird Medical Bldg. Inc. Covering 216 Shares of Common Stock, owned by Winfred C. Braden or Winona L. Braden.

"By relinquishing ownership in this stock, Winfred C. Braden shall share in the profit or loss *of the sale* of the assets of the Laird Medical Building Inc. at 24%.

William B. Anater"

(Italics added.)

After the trial of the case but before judgment the building was sold and a motion to reopen the case was made by Braden. This motion was granted and a further hearing had. The proof shows that the building brought $127,500 from which costs of sale in the amount of $250 were deducted by the trial court. The cost of the land was established at $12,181.13 and the cost of the building at $104,857.33, making a total of $117,038.46, total cost of land and building. To get at the present value of the building the court deducted the write-offs claimed by the corporation owner in determining its net income. The three years for which depreciation was claimed were taken as the period for computing this deduction. The resultant figure amounted to $6,291.42. The original cost of $117,038.46, less the $6,291.42, claimed as depreciation, resulted in a present value of $110,747.04 for the building and the land. By deducting this figure from the net sales price of $127,250 the trial court determined the profit from the sale to be $16,502.96. Twenty-four per cent of this sum is $3,960.71, which amount the court allowed to Braden. Interest was allowed on this sum from July 10, 1947, at the rate of 7 per cent per annum to date of judgment, which was computed to be $392.80, making the total award to Braden $4,353.51.

Throughout the trial each side proceeded upon the theory that the jurisdiction of the trial court was invoked to take an account and determine the net profits resulting from the sale of the corporate property out of which Braden was to receive 24 per cent. ■ It has been held in similar cases that where property is transferred to another and an interest is reserved in profits which may be realized from the sale or operation of the property, a fiduciary relationship is created and the transferee is bound to account to the party

from whom the property was received for the amount of the profits. (*Schaake* v. *Eagle etc. Can Co.*, 135 Cal. 472, 485 [63 P. 1025, 67 P. 759].) ▮ As the court said in *Coward* v. *Clanton*, 122 Cal. 451, 453-454 [55 P. 147], "If plaintiff has a cause of action of which the court has jurisdiction, and it is necessary to have an accounting to determine his rights, it will be done." In accordance with this rule evidence was given of charges and credits which each of the parties contended should be allowed, and the rejection of some of these items is made the basis of their respective appeals. Lewis contends that the court should have deducted an item of $2,500 for attorney fees which he claims was incurred by him as an expense in making the sale in addition to a real estate broker's commission, and that no depreciation should have been allowed in arriving at the present value of the property. ▮ The fact that Lewis may have agreed to pay his attorney $2,500 for his endeavors toward effecting a sale does not by any means bind the court in taking an account to find that this amount should be allowed out of the gross proceeds. The court was bound to allow as a deduction for this purpose only that sum which to it appeared just and reasonable under all of the facts and circumstances of the case. And where the record discloses facts from which the inference that a lesser sum than that contended for should be allowed, the reviewing court may not substitute a different deduction from that arrived at by the trial court. (*Richter* v. *Walker*, 36 Cal.2d 634, 640 [226 P.2d 593]; *Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427, 429 [45 P.2d 183].) The finding with respect to the item of depreciation is likewise substantially supported and under the rule stated in the cited cases this finding may not be disturbed on appeal.

▮ Cross-appellants make the contention that notwithstanding the fact that their stock was transferred to Lewis on July 10, 1947, they are entitled to the earnings on the transferred stock to the date of the sale of the building. The agreement does not so provide. By its terms they are entitled to share in the profits realized from the sale of the corporate property and not from its operation. The determination of the trial court to this effect is also conclusive.

▮ Lewis' contention that there are no grounds for a judgment against him is not consistent with the adjudication that he acquired the title to the 216 shares of stock held by Braden. He cannot, on the one hand, accept the benefit of a judgment adjudicating title in him, and, on the other,

disclaim liability for the purchase price of that which he has acquired. One of the considerations for the transfer of the stock to him was the payment of a share of the profits from the sale of the corporate property under his control. The profits having been properly ascertained by the court upon the accounting, and the funds being in the hands of Lewis, payment of Braden's share to him was properly enforced by judgment against Lewis.

 Nor was it error for the trial court to reopen the case to permit proof of the profits realized from the sale of the corporate property. (*Dolan* v. *Carmel Canning Co.,* 71 Cal.App. 197, 203 [234 P. 926].) As it is said in *Badover* v. *Guaranty Trust etc. Bank,* 186 Cal. 775, 778 [200 P. 638] : ''There can be no question, it seems to us, of the discretionary power of the trial court to permit further evidence in any case at any time before decision where it is believed by the court that the ends of justice will be subserved by so doing. . . . To our minds the trial court has this discretionary power in all cases, and so long as the power is exercised with due regard to the adverse party's right to fully present his side of the case there can be no prejudice of which he has the right to complain on appeal.'' Neither appellant here was denied an opportunity to present all facts material to his case at either of the hearings and there exists no ground for a claim of prejudice to a substantial right. The second hearing simply brought before the court all facts available, to the end that the rights of the parties in the premises could be fully determined and completely and finally set at rest in the one proceeding.

The portion of the judgment appealed from is affirmed.

Van Dyke, P. J., and Schottky, J., concurred.