[Civ. No. 10710. Third Dist. Dec. 4, 1963.]

PALMER REMME, Plaintiff and Respondent, v. HARRY H. HERZOG et al., Defendants and Appellants.

Richard A. Case for Defendants and Appellants.

Allan B. O'Connor for Plaintiff and Respondent.

VAN DYKE, J.*—Herzog Builders Supply Company, Inc., a corporation, Harry H. Herzog and Zella B. Herzog appeal from a judgment in favor of Palmer Remme in the amount of $7,348.73 plus interest from June 1, 1959.

The Herzogs operated a builder's supply business consisting of wholesale and retail lumber supplies. Remme was em-

---

*Retired Presiding Justice of the District Court of Appeal sitting pro tempore under assignment by the Chairman of the Judicial Council.

ployed by the Herzogs in 1955 as the manager of the business. It was agreed orally that his compensation was to be one-third of the net profits of the business. In 1956 the Herzogs incorporated their business, and in April 1957 the corporation and Remme entered into a written contract of employment. This contract read, in part, as follows:

"Manager, PAUL REMME, in lieu of fixed remuneration for services shall receive one third of the net profits of Employer's business, but shall be entitled to the privilege of drawing $600.00 per month, which includes remuneration in the form of either expense or salary during any one year period, which sum so drawn shall be deducted from his share of the net profits of the said business for any one year period after deduction of Employee's bonus. . . ."

On September 30, 1958, Remme terminated his employment. He then brought this action for an accounting and to recover the percentage of profits due him.

█ Appellants first contend that it was improper to grant an accounting because Remme did not produce sufficient evidence to show that he was entitled thereto. Neither the pleadings nor the pretrial conference order show that any objection was made to the court's exercise of its equity jurisdiction. █ In 19 American Jurisprudence, Equity, section 107, page 114, it is stated that unless an objection to equitable jurisdiction is made at the outset, the objection is deemed waived. █ However, it appears from the clerk's transcript, which contains many matters not necessarily included in such a record on appeal, that there had been considerable argument, both oral and by briefs, on the issue of whether or not plaintiff was entitled to an accounting. It might be unfair to hold waiver, but even over objection it would not have been error to grant an accounting in this case. █ As stated in *Coward* v. *Clanton*, 122 Cal. 451, 453-454 [55 P. 147]: "If plaintiff has a cause of action of which the court has jurisdiction, and it is necessary to have an accounting to determine his rights, it will be done. (*San Pedro etc. Co.* v. *Reynolds*, 121 Cal. 74 [53 P. 410].) Whether the facts would have given jurisdiction to a court of equity is of no consequence." (See also *Arbuckle* v. *Clifford F. Reid, Inc.*, 118 Cal.App. 272 [4 P.2d 978]; *Braden* v. *Lewis*, 119 Cal.App.2d 84 [259 P.2d 16.) █ A reading of the transcript makes it clear from the great difficulties involved and the disputes between professional accountants as to what in the nature of profits the books of the corporation showed

that this was a proper case to order an account. It was alleged, and apparently from the whole record the allegation was true, that Remme's employer had possession of the books of account from which the amount of profits earned could be ascertained. Such a situation emphasizes the right of Remme to have an accounting. (See *Brea* v. *McGlashan*, 3 Cal.App.2d 454, 460 [39 P.2d 877].)

Appellants also contend that the trial court improperly computed the amount due Remme. Both accountants were in practical agreement that the books of the corporation showed profits during the fiscal year ending May 31, 1959, the only period during which, according to the findings of the trial court, Remme was entitled to a share of profits, in the sum of $77,285.59 before taxes. The major matter of dispute between the parties concerning profits was whether or not taxes should be deducted before the net profit of the business, as that term was used in the contract of employment, could be determined. The trial court held taxes deductible and Remme does not appeal. In addition to the deductibility of taxes before the determination of net profit, the parties were in contention as to what amount of taxes could be deducted, if they were to be deducted, and this difference was due to the fact that there was a previous loss which could be carried forward for tax purposes. Appellants' accountant wanted to compute the net profits as if there had been no prior losses which could be deducted in determining the amount of taxes due. By his computation a deduction for taxes otherwise due, of $35,000, would have to be taken before ascertaining the amount due from which Remme's percentage was computed. According to his contentions, the appropriate figures would be: net income before taxes, $77,285.59; less provision for federal income taxes, $35,000; net profits, $42,285.59. Respondent's accountant, however, said that if the contract be construed to authorize deduction of provision for federal income taxes it should be limited to the amount of federal income taxes actually to be paid which, by taking credit for the loss carried forward, amounted to $6,908.49.

The trial court determined that the taxes actually paid should be taken as the taxes to be deducted. Oral testimony was received as to the proper construction of the contract. There was testimony that the phrase "net profits" was intended to mean "the final figure that would represent the profit remaining to the company after the Federal Govern-

ment had taken its take." This statement could be construed to mean that taxes actually due were to be deducted in arriving at the amount of net profits. If so, the trial court's determination is supported by substantial evidence and only the taxes actually paid were deductible. ■ An appellate court will accept and adhere to the interpretation of a contract adopted by the trier of fact where parol evidence is introduced in aid of interpretation and where conflicting inferences may be drawn from such evidence. (*E. K. Wood Lumber Co.* v. *Higgins*, 54 Cal.2d 91 [4 Cal.Rptr. 523, 351 P.2d 795].)

■ Appellants also contend that the trial court erred in giving judgment against Harry H. Herzog and Zella B. Herzog individually.

We think from the evidence introduced that the trial court was justified in rendering judgment ·not only against the corporation but against the Herzogs personally. They constituted the stockholders of the corporation. The corporation was, in effect, a continuation of their prior individual business and when that business was being operated by the two, and just before the incorporation of the corporation, the business had a net worth of $325,000. Notwithstanding this, the corporation began business with an invested capital of only $7,700. However, within 30 days after incorporation, the corporation books reflected a note in the amount of $150,000 payable to H.H. Herzog. There was evidence that in operating the business through the corporate entity the Herzogs themselves disregarded that entity. They charged as expenses of the corporation the salary of a man employed by another entity belonging to them; they charged as expenses state highway taxes paid by that other entity; there was other evidence of disregard of the corporate entity by the Herzogs.

■ Undercapitalization is a factor to be considered in determining whether the corporate veil should be pierced. As stated in *Automotriz etc. De California* v. *Resnick*, 47 Cal.2d 792 [306 P.2d 1, 63 A.L.R.2d 1042] : "In Ballantine on Corporations (rev. ed., 1946), at pp. 302-303, it is stated: 'If a corporation is organized and carries on business without substantial capital in such a way that the corporation is likely to have no sufficient assets available to meet its debts, it is inequitable that shareholders should set up such a flimsy organization to escape personal liability. The attempt to do corporate business without providing any sufficient basis of financial responsibility to creditors is an abuse of the separate

entity and will be ineffectual to exempt the shareholders from corporate debts. It is coming to be recognized as the policy of the law that shareholders should in good faith put at the risk of the business unincumbered capital reasonably adequate for its prospective liabilities. If the capital is illusory or trifling compared with the business to be done and the risks of loss, this is a ground for denying the separate entity privilege.' '' During the fiscal year ending May 31, 1959, it appears that the corporation did nearly two million dollars worth of business. We think the trial court was fully justified in rendering judgment against the individuals, as well as against the corporation.

The final contention is that the trial court erroneously computed the award of damages. Respondent agrees that an arithmetical mistake in making that computation did occur. It is one that would have been apparent upon a critical examination of the computation of damages at any time that such an examination was undertaken. The judgment should be modified.

The judgment is modified by reducing the principal amount awarded from $7,348.73 plus interest from June 1, 1959, to $6,173.08 plus interest; and as so modified the judgment is affirmed. In view of the type of error in the calculation of damages, costs on appeal shall be borne by appellants.

Pierce, P. J., and Friedman, J., concurred.

A petition for a rehearing was denied December 31, 1963, and appellants' petition for a hearing by the Supreme Court was denied January 29, 1964.