Filed 3/30/26  Pacific Stone Construction v. Santa Mix CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| PACIFIC STONE CONSTRUCTION, INC. et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> SANTA MIX, INC. et al., <br><br> Defendants and Appellants. | G064727 <br><br> (Super. Ct. No. 30-2021-01178241) <br><br> O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, William D. Claster, Judge. Affirmed.

Snell & Wilmer, Michael J. Baker, Jing Hua, Gregory J. Sonnenberg and Kina Wong for Defendants and Appellants.

Law Offices of Herb Fox and Herb Fox; Mirhosseini Law Group and Ali Reza Mirhosseini for Plaintiffs and Respondents.

This case stems from a dispute between a general contractor, Pacific Stone Construction, Inc. (Pacific Stone), and the corporate owners of restaurants operating under a single brand (appellants). Believing it was owed money for the buildout of the restaurants, Pacific Stone sued for unpaid sums. Among appellants' defenses to the lawsuit, and theories supporting their own cross-complaint, was Pacific Stone's alleged lack of a valid contractor's license. After the parties rested their cases as part of a bench trial, appellants filed a closing argument brief asserting Pacific Stone was barred from recovery under Business and Professions Code section 7031[1] because it failed to present a verified certificate of licensure during trial. The court received briefing and heard oral argument from the parties on the issue and whether it should reopen the evidence. Finding Pacific Stone had a good faith belief licensure was no longer controverted at the time of trial, the court reopened evidence on the issue of licensure only. After receiving the additional evidence, the court found Pacific Stone demonstrated licensure and was entitled to recover a total of roughly $5.7 million, plus interest.

Appellants challenge the trial court's decision to reopen trial and its finding that Pacific Stone established valid licensure. First, they argue Pacific Stone failed, as a matter of law, to demonstrate the good cause required to reopen the evidence. Second, they contend Pacific Stone likewise failed to provide evidence of adequate workers' compensation insurance coverage, thereby rendering its contractor license suspended by operation of law, pursuant to section 7125.2, with the suspension retroactive to the time of the restaurants' construction. We find the trial court did not abuse its

---

[1] All further statutory references are to the Business and Professions Code unless otherwise indicated.

2

discretion in reopening trial and conclude section 7125.2 is inapplicable under the circumstances. Accordingly, we affirm the judgment.

FACTS

I.

UNDERLYING CIRCUMSTANCES

Pacific Stone is a general contractor. Hootan Ataian is its president, chief operating officer, and sole shareholder. Prior to Pacific Stone's formation in 2014, Ataian owned another general contractor entity named Signature Kitchen & Bath (Signature).

Michael Rafipoor is president and chief operating officer of multiple corporations that own restaurants which operate under the name Panini Kabob Grill (PKG). In those roles, he supervises and oversees the operation of the restaurants, each of which is separately incorporated.

Ataian and Rafipoor's business relationship dates to the early 2000s. What began as Ataian doing some stonework at one of Rafipoor's restaurants, turned into Signature being the general contractor for the buildout of multiple PKG restaurants, and ultimately Pacific Stone being secured to construct additional restaurants.

In mid-2019, Rafipoor approached Ataian about the buildout of 10 more PKG restaurants in Southern California on a fixed fee basis with the potential for a substantial bonus. Construction started on many of the locations, but only three restaurants were completed by the time Rafipoor and Ataian's relationship went sour and came to an end in mid-2020.

II.

LAWSUIT AND TRIAL

Believing it was owed money, Pacific Stone sued Rafipoor and, among others, the 10 corporations associated with the 10 PKG restaurants:

3

Santa Brassy, Inc.; Santa Broadway, Inc.; Santa LBX, Inc.; Santa Mission, Inc.; Santa Mix, Inc.; Santa Valencia, Inc.; Saint Arts, Inc.; Santa Cerritos, Inc.; Santa UTC, Inc.; and Santa Vine, Inc. (collectively, the PKG entities). The complaint alleged breach of contract, breach of the implied covenant of good faith and fair dealing, common counts regarding the nonpayment for goods and services rendered, fraudulent misrepresentation, intentional interference with contractual relations, and conversion.

An answer to the complaint generally denied all allegations and asserted various affirmative defenses. One of the affirmative defenses was grounded in state contractor licensing laws. It alleged: "[Pacific Stone] is barred from seeking relief because [Pacific Stone] violated the State Contractor's License Law and failed to comply with the requirements of . . . section 7031."

The PKG entities also filed a cross-complaint, naming Pacific Stone, Ataian, and two other individuals as cross-defendants (collectively, cross-defendants). Among other matters, the cross-complaint alleged the cross-defendants were negligent in planning, designing, and constructing the restaurant improvements, failed to perform the work in a workman-like manner, and failed to obtain necessary permits and final approvals for the construction. One cause of action, brought against Ataian only, alleged Ataian "was not [a] licensed contractor[] when work was performed, or at any time thereafter," and Pacific Stone used a sham responsible managing employee to obtain certain licensure. Due to Ataian's alleged unlicensed status, it further alleged Ataian was "precluded from demanding compensation for any services rendered" and the PKG entities were "entitled to recover all sums they paid . . . to [him] . . . for services performed[,] as well as all costs and attorney's fees."

4

Roughly one week before what turned into a three-day bench trial, the parties filed a joint list of controverted issues and separate trial briefs. Among the list of 35 controverted issues were the following: (1) "[w]hether Plaintiff or Cross-Defendants are in violation of the California Contractor's License Law"; and (2) "If Plaintiff and Cross-Defendants are in violation of the California Contractor's License Law, is Plaintiff precluded from receiving compensation for services rendered?" Both sides' trial briefs also referenced the licensure related allegations. Specifically, Pacific Stone and the other cross-defendants' trial brief acknowledged the cross-complaint alleged they did not have a valid contractor's license, but argued "the evidence [would] show [Pacific Stone] has been a licensed contractor since 2014" and "there [would] be no evidence presented to the contrary." In contrast, Rafipoor and the PKG entities' trial brief contended Pacific Stone "b[ore] the burden of proving it was properly licensed," it could not do so because it would be "unable to prove that it has adequately and properly maintained its workers' compensation [insurance]," and the PKG entities were thus "entitled to disgorgement of all compensation paid to Pacific Stone."

During trial, the only mention of licensure came during the direct examination and cross-examination of Ataian. During the former, Pacific Stone and cross-defendants' counsel asked whether Ataian, as a contractor, held any licenses issued by the State. He responded he held two different ones since 2008; a general contracting license and an electrical license. During cross-examination, in a line of questioning about lien releases, Rafipoor and the PKG entities' counsel asked Ataian, "[Y]ou're a licensed contractor, correct?" After Ataian answered affirmatively, counsel proceeded

to inquire about Ataian's knowledge of lien laws and whether he provided any lien releases to the PKG entities.

III.

POST-TRIAL BRIEFING

After the close of all evidence, the parties concurrently submitted closing argument briefs. The first argument in Rafipoor and the PKG entities' brief was that Pacific Stone was statutorily barred from recovering anything. So the argument went, section 7031, subdivision (d), precluded Pacific Stone from recovering any compensation for work performed because it "failed to meet its burden of proof to establish contractor licensure under California law" by not producing at trial a verified certificate of licensure from the Contractors State License Board. Pacific Stone and Ataian's brief only addressed licensure in the context of the cross-complaint's allegations that Ataian was not licensed. They argued Ataian testified he had been a licensed contractor continuously since 2008 and the other side failed to provide testimony or other evidence that he was not licensed.

Eight days later, having reviewed the parties' closing briefs, the trial court issued an order requesting further briefing on the licensure issue. Specifically, it asked whether Pacific Stone agreed that section 7031, subdivision (d), applied, whether there were any exceptions to the statute's requirements, and whether, and under what legal theory, Pacific Stone would be entitled to recover for work performed if the statute applied.

Pacific Stone and Ataian took the position that they did not need to submit Pacific Stone's verified certificate of licensure because Rafipoor and the PKG entities were "misle[ading] [the] [c]ourt into believing there [was] a legitimately controverted issue over Pacific Stone's licensure, where none exist[ed]." They accused Rafipoor and the PKG entities of filing "sham

6

pleadings," noting Rafipoor and the PKG entities produced to Pacific Stone during discovery a certified license history of Pacific Stone, and Pacific Stone produced to them "proof of Pacific Stone's adequate and properly maintained workers' compensation coverage." Combined with the lack of additional questioning of Ataian about licensing after he testified he was licensed, Pacific Stone and Ataian argued they were "mislead . . . into thinking that the issue of licensure was resolved."

In response, Rafipoor and the PKG entities argued Pacific Stone's licensure was "clearly, consistently, and properly controverted," but Pacific Stone inexcusably failed to provide the required proof of licensure at trial. Not only did they highlight the lack of a verified certificate, but they also raised the lack of evidence demonstrating adequate and properly maintained workers' compensation insurance. From their perspective, Pacific Stone was not entitled to a "'second bite at the apple.'"

IV.

REOPENING OF EVIDENCE

After receiving the briefing regarding licensure, the trial court issued an order stating it was "considering allowing the reopening of the trial for the limited purpose of considering evidence pertaining to the licensing issue under . . . section 7031." It scheduled a status conference and asked the parties to submit a joint statement addressing whether trial should be reopened, what evidence would be introduced and what witnesses would be called if it was reopened, and time estimates.

The parties maintained their positions. Pacific Stone and Ataian urged the trial court to exercise its discretion to reopen trial because there was good cause to do so. The good cause they identified consisted of: (1) Rafipoor and the PKG entities' false controverting of Pacific Stone's license;

7

(2) their failure to "bring up the issue at any time during trial"; and (3) their "shifting [of] the goal posts on the licensure issue throughout th[e] litigation[,] depriving [Pacific Stone] of the opportunity to be heard on validity of its license." Rafipoor and the PKG entities recognized reopening trial was a discretionary act, but asserted there was no good cause to do so. They argued the licensure issue was clearly controverted, Pacific Stone already had the opportunity to present evidence concerning it, and it did not have a justifiable excuse for not doing so. The parties jointly estimated that presenting the additional evidence would take about one day.

At the status conference, the trial court heard argument from the parties after indicating its inclination to reopen the evidence. In explaining its ultimate decision to reopen matters for the limited purpose of taking evidence concerning the licensure issue, including the workers' compensation insurance dispute, the court acknowledged the licensure issue was technically controverted. But, it also found there was a good faith, credible belief by Pacific Stone that the license issue was no longer controverted at the time of trial. The court expressed Pacific Stone "probably should've known better and should've, out of an excess of caution, submitted evidence on the [issue of] licensure." At the same time, it said the near lack of questioning by defense counsel on the licensure issue at trial surprised the court. Combined with the lack of a motion for a directed verdict, the court itself thought no one was really arguing about licensure anymore. Based on these circumstances, and because the evidence concerning licensure was produced during discovery, the court determined there was good cause "such that [it] would rather decide the case on the facts rather than not decide it on the facts."[2]

---

[2] After the trial court ruled it would reopen the evidentiary portion of the trial, Rafipoor and the PKG entities sought a writ of mandate

8

On the day the trial court heard the additional evidence, it reminded the parties the evidence should be limited to Pacific Stone's licensure status. Ataian testified Pacific Stone continuously held two categories of licenses issued by the Contractors State License Board since 2014, and the court admitted into evidence a verified certificate of licensure for Pacific Stone. Ataian also presented certificates of insurance for years 2014 through 2018, and confirmed Pacific Stone had workers' compensation insurance at all times it was doing work for the PKG entities. He further testified Pacific Stone was never denied coverage based on underreporting or inadequate premium payments.

Questioning of Ataian by counsel for Rafipoor and the PKG entities focused on the continuity of licensure, information about the person listed as the responsible managing employee (RME) for Pacific Stone's tile work license, and Pacific Stone's workers' compensation insurance. Regarding the RME, Ataian confirmed the person was not a full-time employee during the time period at issue. As for workers' compensation insurance, he explained the payroll information Pacific Stone provided to the insurance company on its annual application was an estimate and that the insurance company would conduct an audit at the end of every year. The annual audits identified additional premiums owed and Pacific Stone paid them. Ataian also testified Pacific Stone employees performed various types of work for the PKG entities' projects, but some of the work was subcontracted to others. Although he acknowledged that the only classification listed on a workers' compensation insurance application submitted by Pacific Stone to the insurance company was tile work, he testified Pacific Stone told the

from this court on the issue. Another panel of this court summarily denied the writ petition.

9

insurance company its employees did other types of work. When asked whether there was paperwork to show that, Ataian said his office manager handled the insurance matters and he did not have any documents with him.

The trial court also heard testimony from the insurance broker who handled Pacific Stone's insurance for the relevant period. The broker testified Ataian provided her with all the information for the insurance application and he told her Pacific Stone only had tile workers. In addition, she explained she was under the impression Pacific Stone was using subcontractors for all other work.

At the close of the additional evidence, the trial court took the matter under submission.

V.

STATEMENT OF DECISION AND JUDGMENT

After issuing a proposed statement of decision and considering objections thereto, the trial court issued a 28-page statement of decision.

Regarding licensure, the court found Pacific Stone had a valid general contractor license during the relevant time period, evidenced by the verified certificate of licensure, and all the work performed by it on the PKG entities' projects was within the scope of its license. Consistent with its characterization of the "testimony regarding the setting of premiums for [Pacific Stone's] workers['] compensation policies [as] somewhat murky," the court recognized there was conflicting and inconclusive evidence concerning Pacific Stone's number of employees, the amount of non-tile work performed by those employees, the amount and type of work performed by subcontractors, and whether Pacific Stone "properly paid for all such work per the year-end audit." Ultimately, the court concluded that "while [Pacific Stone]'s estimates of employee hours and use of [a sole classification with]

10

low base rates raise[d] questions regarding potential underreporting, they [were] not enough to warrant invalidating its license."

On the remaining disputed issues, the court ruled largely in Pacific Stone's favor. It found there was a written contract between the parties concerning the construction projects. Based on the contract and the parties' actions, it concluded Pacific Stone was entitled to recover from the PKG entities for work performed through the mutual termination date, but it was not entitled to payment for any uncompleted work or any bonus amounts. The court calculated damages separately as to each entity. Except for one entity that overpaid and was entitled to recover $108,000 from Pacific Stone, the remaining entities owed Pacific Stone between $260,000 and $1,189,357, with specified interest.

The court entered judgment consistent with its statement of decision and eight of the PKG entities timely appealed.[3]

DISCUSSION

Appellants challenge the trial court's decision to reopen the evidentiary portion of the trial and its adjudication of the licensing issue after taking evidence. Regarding the reopening, they argue the court erred in determining Pacific Stone's good faith belief about whether licensure remained controverted could excuse its failure to present the evidence in the first instance. In addition, they contend the court's reasoning wrongfully

---

[3] The eight appellants listed on the notice of appeal, which we refer to as appellants, are Santa Mix, Inc.; Santa Cerritos, Inc.; Santa Valencia, Inc.; Saint Arts, Inc.; Santa Vine, Inc.; Santa LBX, Inc.; Santa Brassy, Inc.; and Santa Broadway, Inc. The entity that the trial court determined was entitled to recover from Pacific Stone, Santa Mission, Inc., did not appeal, and the one remaining entity, Santa UTC, Inc., was not part of the judgment because of a mid-trial ruling by the court.

"flipp[ed] the burdens imposed by section 7031 and fault[ed] [a]ppellants for failing to bring a dispositive motion." Regarding the licensure determination, appellants assert the trial court erred in concluding Pacific Stone's license was not invalidated by operation of law. We find no abuse of discretion in the trial court's reopening of evidence, and we likewise find no error in the court's resolution of the licensing issue.

## I.

### REOPENING OF EVIDENCE

"The decision to reopen a case for the introduction of further evidence lies largely within a trial court's discretion." (*In re Marriage of Olson* (1980) 27 Cal.3d 414, 422; accord *Horning v. Shilberg* (2005) 130 Cal.App.4th 197, 208; *Rosenfeld, Meyer & Susman v. Cohen* (1987) 191 Cal.App.3d 1035, 1052.) This broad discretion is part of a "court's fundamental authority to control the order of proof and the conduct of proceedings before it." (*Rosenfeld*, at p. 1052, fn. 7.) We review a decision concerning the reopening of evidence for an abuse of discretion. (*Horning*, at p. 208.) That is, we look to "whether the trial court's decision exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, we have no authority to substitute our decision for that of the trial court." (*Id.* at pp. 208–209.)

Recognizing the decision to reopen evidence after all parties have rested is a discretionary one, appellants argue the trial court abused its discretion because Pacific Stone failed to demonstrate the requisite good cause. We are not persuaded.

Section 7031, subdivision (a), provides in relevant part: "[N]o person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action, or recover in law or equity in any action, in any

12

court of this state for the collection of compensation for the performance of any act or contract where a license is required by this chapter without alleging that he or she was a duly licensed contractor at all times during the performance of that act or contract, regardless of the merits of the cause of action brought by the person." Subdivision (d) of the same statute specifies that "[i]f licensure or proper licensure is controverted, then proof of licensure . . . shall be made by production of a verified certificate of licensure from the Contractors State License Board which establishes that the individual or entity bringing the action was duly licensed in the proper classification of contractors at all times during the performance of any act or contract covered by the action. Nothing in this subdivision shall require any person or entity controverting licensure or proper licensure to produce a verified certificate. When licensure or proper licensure is controverted, the burden of proof to establish licensure or proper licensure shall be on the licensee." "Read together, subdivisions (a) and (d) of section 7031 provide that the contractor must plead licensure, and, if licensure is 'controverted,' must also prove licensure by producing a verified certificate." (*Advantec Group, Inc. v. Edwin's Plumbing Co., Inc.* (2007) 153 Cal.App.4th 621, 626–627.)

Here, Pacific Stone pled licensure, but it was undisputed Pacific Stone did not produce at trial a verified certificate of its licensure before the court reopened the evidence. The court acknowledged as much when it made the challenged ruling. However, the court found the reason for the absence was due to Pacific Stone's good faith belief that its licensure was no longer controverted during trial. Its determination about the good faith nature of Pacific Stone's belief was based on two things: (1) a finding that Pacific Stone's counsel's statements about their subjective belief were credible; and

13

(2) the court's observations of how the proceedings unfolded, including the court's own impression of the contested matters.

Attorneys are officers of the court, and in that role, they have a duty "[t]o employ, for the purpose of maintaining the causes confided to [them] those means only as are consistent with truth, and never to seek to mislead the judge or any judicial officer." (§ 6068, subd. (d).) The trial court was entitled to rely on Pacific Stone's counsel's representations. There is no evidence that counsel intended to mislead the court. Further, assessing credibility under these circumstances is exclusively within the province of the trial court. (See *Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 476 [good faith determinations involve questions of credibility]; *People v. Smith* (1993) 6 Cal.4th 684, 697 [trial court assesses representations by counsel].) It is not our role to second guess its determination in that respect.

Not only did the court find Pacific Stone's counsel to be credible, but the court additionally conveyed it was also left with an impression that licensure was no longer at issue as it watched the trial proceedings evolve. Although we have a transcript of those proceedings, we are limited to words on a page, and we will not supplant our impressions for those of the court which observed the proceedings firsthand.

With a credited statement by Pacific Stone's counsel about its subjective belief that licensure became a nonissue at trial and the trial court's same subjective impression, we cannot say the trial court's decision to reopen the evidence to allow Pacific Stone to present evidence concerning licensure exceeded the bounds of reason. This is particularly so given that it was undisputed all parties had the documents and information relevant to the licensure issue as a result of the discovery process, and the matters were being tried to the court, not a jury.

14

"'[S]o long as the [discretionary] power [to reopen the evidence] is exercised with due regard to the adverse party's right to fully present his side of the case there can be no prejudice of which he has the right to complain on appeal.'" (*Braden v. Lewis* (1953) 119 Cal.App.2d 84, 89; accord *In re Estate of Cesare* (1955) 130 Cal.App.2d 557, 561.) The trial court's expressly stated goal in reopening evidence in this case was to decide disputed issues on the merits based on all evidence, and appellants were given the opportunity to present their side of the licensure issue after the reopening of evidence.

Contrary to appellant's assertions, the policies underlying section 7031 do not circumscribe the trial court's discretionary authority. Section 7031 is "designed to enforce compliance with [state contractor] licensing requirements" (*Judicial Council of California v. Jacobs Facilities, Inc.* (2015) 239 Cal.App.4th 882, 895), which, in turn, are intended "to protect the public from incompetence and dishonesty in those who provide building and construction services" (*Hydrotech Systems, Ltd. v. Oasis Waterpark* (1991) 52 Cal.3d 988, 995). The statute is intended to have a harsh effect on unlicensed contractors so that it acts as a deterrent. (*Ibid.*) A court's determination to reopen evidence to allow a contractor to demonstrate licensing compliance does nothing to undermine that deterrent effect or the Legislature's goal of having contractors comply with licensing requirements.

II.

PACIFIC STONE'S LICENSURE

Section 7125.2 provides, in part: "The failure of a licensee to obtain or maintain workers' compensation insurance coverage, if required under this chapter, shall result in the automatic suspension of the license by operation of law in accordance with the provisions of this section." Subdivision (a) of the statute specifies the license suspension "is effective

15

upon the earlier of either of the following: [¶] (1) [o]n the date the relevant workers' compensation insurance coverage lapses; [¶] (2) [o]n the date that workers' compensation coverage is required to be obtained."

The trial court concluded section 7125.2 did not have an impact on Pacific Stone's licensed status which was otherwise demonstrated by a verified certificate of licensure. Appellants make various arguments as to why this was error, but each is premised on the notion that an automatic license suspension under section 7125.2 occurs if a contractor fails to obtain or maintain *adequate* workers' compensation insurance. We disagree with this premise.

Section 7125.2's language is unambiguous. An automatic suspension by operation of law takes place if a licensee is required to have worker's compensation insurance coverage but fails "to obtain or maintain workers' compensation insurance." (§ 7125.2) "Obtain" means "to gain or attain." (Merriam-Webster Dict. Online (2026) <https://www.merriam-webster.com/dictionary/obtain, par. 1> [as of Mar. 25, 2026] archived at: < https://perma.cc/B5WL-9W7K>.) And "maintain" means "to keep in an existing state." (Merriam-Webster Dict. Online (2026) <https://www.merriam-webster.com/dictionary/maintain, par. 1> [as of Mar. 25, 2026] archived at: < https://perma.cc/F6K5-JLCR>.) Thus, the ordinary meaning of the statute's plain language indicates an automatic suspension occurs when a licensee who is required to have workers' compensation insurance coverage fails to get or keep such insurance. (*People v. Cornett* (2012) 53 Cal.4th 1261, 1265 ["plain meaning controls if there is no ambiguity in the statutory language"].)

Nothing in Business and Professions Code section 7125.2 or the plain meaning of its language indicates the adequacy of obtained or maintained insurance is, alone, relevant. We cannot rewrite the statute

16

under the guise of statutory interpretation. (See Code Civ. Proc., § 1858; *California Fed. Savings & Loan Assn. v. City of Los Angeles* (1995) 11 Cal.4th 342, 349.)

Appellants' reliance on *Wright v. Issak* (2007) 149 Cal.App.4th 1116, is misplaced. There, a contractor who performed a four-month home remodeling job sued the homeowner to recover an unpaid sum. (*Id.* at p. 1118.) The homeowner defended the action and filed a cross-complaint for reimbursement on the grounds that the contractor was not licensed. (*Id.* at pp. 1118–1119.) Workers' compensation insurance records showed the contractor "reported zero or next to zero payroll for every payroll period" over the course of about 19 months, including the time the contractor performed the remodel. (*Id.* at p. 1119.) However, payroll records from a 10-month period within that timeframe showed the contractor had an actual payroll of $135,000. (*Ibid.*) As a result of the underreporting, the contractor did not obtain any workers' compensation insurance. (*Id.* at p. 1121.) The court of appeal affirmed the trial court's determination the contractor was not a licensed contractor because the license was automatically suspended by operation of section 7125.2, with its reasoning based on the complete lack of workers' compensation insurance being a failure to obtain situation under the statute. (*Id.* at pp. 1121–1122.) Here, in contrast, it is undisputed Pacific Stone had workers' compensation insurance, making *Wright* of no import. (See *Loranger v. Jones* (2010) 184 Cal.App.4th 847, 857 [finding *Wright* inapplicable to alleged payroll underreporting situation where evidence showed contractor had workers' compensation insurance policy]; *Castillo v. Toll Bros., Inc.* (2011) 197 Cal.App.4th 1172, 1211 [finding *Wright* inapplicable to alleged misreporting of wage classifications situation where evidence showed contractor had workers' compensation insurance policy].)

17

In sum, although failure to obtain or maintain adequate workers' compensation insurance may have potential consequences depending on the circumstances (see, e.g., Labor Code, § 3820 [civil penalties for willfully misrepresenting any fact to obtain workers' compensation insurance at less than proper rate]; *People v. Riddles* (2017) 9 Cal.App.5th 1248, 1253–1254 [workers' compensation insurers may recover, as victim restitution, premiums they would have earned in absence of fraudulent representations by contractor]), the plain language of Business and Professions Code section 7125.2 leads us to conclude suspension of a contractor's license by operation of law pursuant to it is not one of them. Accordingly, appellants' challenge to the trial court's decision based on the alleged inadequacy of Pacific Stone's workers' compensation insurance is without merit.

DISPOSITION

The judgment is affirmed. Pacific Stone is entitled to costs on appeal.

DELANEY, J.

WE CONCUR:

MOTOIKE, ACTING P. J.

GOODING, J.

18